UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CLAUDE A. COTE,<br>    Plaintiff, | :<br>:<br>: |
| v. | : C.A. No. 1:20-cv-504 |
| STANDARD INSURANCE CO.,<br>    Defendant. | :<br>:<br>: |

# COMPLAINT

### *Parties*

1. Plaintiff Claude A. Cote is a citizen of the United States and the State of Rhode Island, and is domiciled in Lincoln, Rhode Island.

2. Defendant Standard Insurance Co. ("The Standard") is incorporated under the laws of the State of Oregon with a principal place of business located in Portland, Oregon.

### *Jurisdiction and Venue*

3. This Court has subject matter jurisdiction over this Employee Retirement Income Security Act of 1974, as amended ("ERISA"), action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

4. Venue is proper in the District of Rhode Island under 28 U.S.C. § 1391 and 29 U.S.C. § 1132 because a substantial part of the events or omissions giving rise to the claim occurred in Rhode Island—where benefits should have been paid.

5. The Standard has sufficient minimum contacts with the State of Rhode Island to subject it to this Court's jurisdiction.

***General Allegations***

6.  Plaintiff is a participant in Longroad Energy Management, LLC's Long Term Disability Plan (the "Plan"), which is governed by ERISA.

7.  The Standard administers the Plan and also pays claims made under the Plan. (Certificate and Summary Plan Description, Ex. A.)

8.  On January 15, 2018, Plaintiff's insurance under the Plan became effective.

9.  On or about November 17, 2018, Plaintiff became disabled because of a large bowel obstruction. He underwent emergency surgery and required a temporary ileostomy. (Employee/Attending Physician's Statement, Ex. B.) This is an excerpt from a five-page document according to the page numbers. The Standard did not provide the entire five page document with its response to a request by counsel for the complete claim file.

10. The Standard also administers, and pays claims, for a short-term disability plan in which Plaintiff participates. On January 30, 2019, Plaintiff filed a claim for short-term disability benefits because of the large bowel obstruction that rendered him disabled. (Short Term Disability Attending Physician's Statement, Ex. C.) The Standard approved that claim, and Plaintiff received those benefits for their maximum duration of ninety days.

11. In December 2018, Plaintiff applied for long-term disability benefits under the Plan. The Employee/Attending Physician's Statement, which was filed out by Nishit Shah, MD, and which is part of the application for benefits, provides that the diagnosis resulting in Plaintiff's disability was "Complicated diverticulitis / large bowel obst[ruction]." Id. Dr. Shah explains in that document that Plaintiff underwent a colectomy and had a

temporary ileostomy placed, and that Plaintiff needed to recuperate at home before he could return to work. Id.

12. The Standard denied Plaintiff's claim asserting that diverticulitis was a preexisting condition excluded by the Plan. (Denial Letter, Ex. D.)

13. The Standard did not substantially address Plaintiff's large bowel obstruction in its analysis of the preexisting condition exclusion. Id.

14. The preexisting condition exclusion provides:

> "C. Preexisting Condition
>
> . . .
>
> "2. Exclusion
>
> "You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become disabled, you:
>
> "a. Have been continuously insured under the Group Plan for 12 months; and
>
> "b. Have been Actively At Work for at least one full day after the end of that 12 months." (Plan Certificate and Summary Plan Description, Ex. A.)

15. The policy defines "Preexisting Condition" as follows:

> "C. Preexisting Condition
>
> "1. Definition
>
> "Preexisting Condition means a mental or physical condition whether diagnosed or misdiagnosed:
>
> "a. For which you have done or for which a reasonably prudent person would have done any of the following:
>
> "1. Consulted a physician or other licensed medical professional;

3

> "2.  Received medical treatment, services or advice; Undergone diagnostic procedures, including self-administered procedures;
>
> "3.  Taken prescribed drugs or medications;
>
> "b. Which as a result of any medical examination, including routine examination, was discovered or suspected;
>
> "at any time during the 90-day period just before your insurance became effective." Id.

16. The 90-day period just before Plaintiff's insurance became effective runs from October 17, 2017 to January 14, 2018 (the 90-Day Period).

17. The Standard denied Plaintiffs claim by letter, on the basis that if section either a or section b of the definition of Preexisting Condition in the Plan were satisfied, the condition would be excluded from coverage. (Denial Letter, Ex. D.)

18. The Plan's plain language requires that both section a and b be met to exclude a condition as preexisting.

19. The Standard claims that "[t]his is the manner in which The Standard has consistently administered the Preexisting Condition provision over the course of many years." (Appeal Denial Letter, Ex. E.)

20. The Standard, upon request, refused to provide support for its claim that it consistently applies the exclusion in this way despite expressly relying on its past practice to deny Plaintiff's claim. (Request for Documents, Ex. F; Denial of Request for Documents, Ex. G.) This exhibit is the letter only, not the 48 pages of material unrelated to the request made. No documents evidencing a previous decision interpreting the

preexisting condition provision as The Standard has here was included with this correspondence.

21. Plaintiff did not, during the 90-Day Period: (1) consult a physician or other licensed medical professional about a bowel obstruction; (2) receive medical treatment, services, or advice about a bowel obstruction; (3) undergo any diagnostic procedures, including self-administered procedures related to a bowel obstruction; or (4) take any prescribed drugs or medications for a bowel obstruction.

22. The Standard claims that "a reasonably prudent person" would have sought treatment during the 90-Day Period.

23. In support of this claim, The Standard relies on a routine colonoscopy report that notes diverticulosis (not diverticulitis, as they claim).  This colonoscopy occurred on June 21, 2017, before the 90-Day Period began.

24. The physician recommended in the colonoscopy report that Plaintiff follow up in four months.

25. The Standard claims that because the exact date four months from the date of the colonoscopy lands four days into the 90-Day Period, Plaintiff's claim must be denied.

26. The Standard's position disregards that recommendations to follow up are always based on approximate dates, and Plaintiff could have reasonably followed up five days before four full months elapsed and not fallen within the 90-Day Period.

27. The Standard's position also disregards that Plaintiff had no symptoms or reason to follow up from this routine colonoscopy.  He did not experience symptoms until more than a year later, so even if he had followed up, he more probably than not would

not have received any treatment that would render his condition "preexisting" under the Plan.

28.     The Standard erroneously stated that "The medical records indicate that you were not seen during the Preexisting Period but a prudent person with your symptoms would have been treated." (Appeal Denial Letter, Ex. E at 2.)  Plaintiff had no symptoms until many months later.

29.     The Standard's position also disregards that Plaintiff was also disabled because he required surgery and an ileostomy to treat a large bowel obstruction.  Nothing in Plaintiff's claim file suggests he had reason to seek treatment for this condition during the 90-Day Period.

30.     The Standard's position also disregards that, to the extent that diverticulosis would be seen as a contributing factor to Plaintiffs disability, even if Plaintiff followed up on this condition during the 90-Day Period, it had been diagnosed before the 90-Day Period began, making it impossible to for that condition to fall within the Plan's definition of preexisting condition.

31.     Plaintiff's condition was not a preexisting condition, as defined by the Plan, because no condition leading to his disability was "discovered or suspected at any time during the 90-day period just before [Plaintiff's] insurance became effective."  Plaintiffs diverticulosis was diagnosed and known months before the 90-Day Period began, so it could not be "discovered or suspected" during that time, and Plaintiffs large bowel obstruction was not discovered until well after coverage began under the Plan.

## **COUNT I**
*Civil Action to Recover Benefits Due to Plaintiff Under the Terms of the Plan*
(ERISA § 502(a)(1)(B), codified as 29 U.S.C. § 1132 (a)(1)(B))

32. Plaintiff restates all preceding allegations as if fully set forth herein.

33. Plaintiff has exhausted his administrative remedies by appealing The Standard's denial of benefits. Plaintiff received no relief from that appeal.

34. The Standard has a conflict of interest in administering the Plan because it also pays claims made against the Plan itself.

35. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to them under the terms of a plan, to enforce their rights under the terms of a plan, and/or to clarify their rights to future benefits under the terms of a plan.

36. Plaintiff suffered from a long-term disability, as defined by the plan, while covered by the Plan. Plaintiff was not disabled as a result of any preexisting condition, nor was he subject to any other exclusion under the Plan.

37. Nevertheless, The Standard denied coverage under the Plan and has refused to pay benefits due to Plaintiff under the Plan.

38. The Standard's interpretation of the Plan is contrary to the plain language of the Plan.

39. The Standard has thus far refused to provide any support for its claimed past practice of interpretation of this provision of the Plan despite expressly relying on its past practice when denying Plaintiff's claim.

40. The Standard provided no rules, regulations, policies, or interpretive guidance used to ensure uniformity among benefit decisions despite claiming that the policy is always interpreted one way.

41. The Standard's reliance on its past practice while refusing to provide evidence of that past practice, if it exists at all, is arbitrary and capricious.

42. By denying Plaintiff's claim under the Plan, The Standard has violated, and continues to violate, the terms of the Plan and Plaintiff's rights under the Plan.

WHEREFORE, Plaintiff demands judgment against The Standard, and prays that the Court award Plaintiff damages, interest, costs, and attorney fees, and award any other relief, whether legal or equitable, that the Court deems just.

> Plaintiff, Claude A. Cote,
> By His Attorneys,
>
> /s/ Max Wistow
> Max Wistow, Esq. (#0330)
>
> /s/ Kenneth J. Sylvia
> Kenneth J. Sylvia, Esq. (#9791)
> Wistow, Sheehan & Loveley, PC
> 61 Weybosset Street
> Providence, RI  02903
> (401) 831-2700
> (401) 272-9752 (fax)
> mw@wistbar.com
> ksylvia@wistbar.com

Dated:   December 3, 2020